```
                  UNITED STATES DISTRICT COURT
                   DISTRICT OF MASSACHUSETTS
```

|  |  |
|---|---|
| ANDREW GROSS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION |
| ) | NO. 08-10223-WGY |
| FEDERAL EXPRESS CORP. LONG TERM ) | |
| DISABILITY PLAN, ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM AND ORDER

YOUNG, D.J.                                          March 23, 2010

**I.   INTRODUCTION**

Andrew Gross ("Gross"), a former employee of Federal Express Corporation ("FedEx"), brings a claim for long-term disability benefits under the Federal Express Corporation Long Term Disability Plan ("LTD Plan" or "Plan"), which is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq.  Gross claims that by denying him benefits, the Federal Express Corporation Benefits Review Committee (the "Committee") violated ERISA and the terms of the Plan.  Compl. ¶ 18.

   **A.   Procedural Posture**

Gross filed his Complaint on February 11, 2008 [Doc. No. 1]. On February 1, 2010, the parties cross-moved for summary judgment. Def.'s Mot. for Sum. J. [Doc. No. 19]; Pl.'s Mot. for Sum. J. [Doc. No. 23]. Since the facts appear to be without significant dispute, the parties consented to have the case treated as a case stated.[1]

### B. Federal Jurisdiction

This case involves a question of federal law, and this Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## II. FINDINGS OF FACT

---

[1] Derived from the procedures of the courts of the Commonwealth of Massachusetts, see, e.g., Parker v. Morrell, 59 Mass. App. Dec. 34 (Mass. Dist. Ct. 1976), the "case stated" procedure is firmly established in the jurisprudence of the First Circuit. See, e.g., Boston Five Cents Sav. Bank v. Secretary of Dep't of Hous. & Urban Dev., 768 F.2d 5, 11-12 (1st Cir. 1985); Continental Grain Co. v. Puerto Rico Maritime Shipping Auth., 972 F.2d 426, 429 n.7 (1st Cir. 1992); Bunch v. W.R. Grace & Co., 532 F. Supp. 2d 283, 286-87 (D. Mass. 2008). It is a most helpful procedural device. In this session of the Court, it works like this: whenever cross motions for summary judgment reveal that the relevant facts appear without significant dispute, the courtroom deputy clerk offers the parties to treat the case as a case stated. Should they accept, as was the case here, the Court treats the undisputed facts as the established record and draws the reasonable inferences therefrom without the necessity of drawing adverse inferences against each moving party, see Fed. R. Civ. P. 56. The facts of the case being established, the Court affords each party thirty minutes for final argument (not the usual ten minutes per party when hearing argument on a motion). In due course, the Court enters findings and rulings as required by Fed. R. Civ. P. 52(a).

The LTD Plan is administered and maintained by FedEx to provide payment of long-term disability benefits to its employees. A.R. 545.[2] All disability benefits are paid out of the "Trust Fund." A.R. 581. FedEx sponsors the Trust Fund by making annual irrevocable payments in amounts that are actuarially determined to be sufficient to fund on a level basis the benefits provided thereunder. A.R. 582-83. The LTD Plan grants the Committee discretionary authority to evaluate an applicant's eligibility for benefits. A.R. 591.

A FedEx employee is eligible to receive benefits under the Plan if he or she becomes "disabled" under the terms of the Plan. A.R. 561. Disability is defined as either "occupational disability" or "total disability," which must be substantiated by significant objective findings. A.R. 548-49. Significant objective findings are those that "can be observed by [the employee's] health care professional through objective means, not just from [the employee's] description of the symptoms." A.R. 536.

An employee is entitled to receive benefits for longer than two years in cases of "total disability," which is defined as "the complete inability of a Covered Employee because of a medically-determinable physical impairment . . ., to engage in any compensable employment for twenty-five hours per week for

---

[2] Citations to "A.R. #" refer to page numbers in the administrative record filed as exhibits to the affidavit of Robin L. Marsh [Doc. No. 22].

3

which he is reasonably qualified (or could reasonably become qualified) on the basis of his ability, education, training or experience." A.R. 555-56.

Gross had worked for FedEx as a checker-sorter in 1989. A.R. 10. That position required the ability to lift objects up to seventy-five pounds. A.R. 31. As a permanent full-time employee, Gross was covered under the LTD Plan. A.R. 548. In October 2003, Gross suffered an acute myocardial infarction and had a stent placed in his coronary artery. A.R. 3. Upon being discharged from the hospital, he was instructed not to lift objects over twenty-five pounds and not to return to work. A.R. 156. Gross received short-term disability benefits for approximately six months and long-term occupational disability benefits for two years up until May 2006. A.R. 10-11. When ultimately he was denied total disability benefits from the LTD Plan, Gross appealed the decision to the Committee. A.R. 16.

Gross submitted plenty of medical records in support of his appeal. Gross' treating cardiologist, Dr. Laham, in several letters indicated that as to April 2004, Gross' "symptoms [had] markedly improved," and that he "appear[ed] to be doing quite well from a cardiovascular standpoint except for occasional symptoms." A.R. 181-82. Several other test reports and progress notes suggested the same. See Def.'s Statement of Material Facts ¶¶ 16-43. Dr. Laham confirmed that Gross ought not lift anything more than twenty pounds. A.R. 21, 284.

Gross also submitted a report from Dr. Clayman, a psychotherapist. A.R. 25-29. Dr. Clayman concluded that Gross had a full scale IQ score of fifty-eight, placing him in the mild mental retardation range of intellectual functioning. A.R. 28. He also concluded that Gross had a reading comprehension disorder and a word identification disorder. A.R. 29. He further stated that Gross' low mental ability was a life-long condition. A.R. 92-95. Dr. Clayman made a conclusion that Gross was totally disabled based on his mental condition. A.R. 29.

Further, Gross submitted information from the U.S. Department of Labor's O*NET database ("O*NET"). A.R. 47-52. Such information purported to show that "skills search" results for Gross list occupations only in the second or higher job zones, which require mental ability beyond Gross' capacity and list no occupations in job zone one, which require little or no preparation and experience. A.R. 23, 57-63.

Gross also submitted a vocational assessment report from James Parker, a vocational consultant. A.R. 73-80. Based primarily on Dr. Cayman's report, James Parker opined that "more likely than not Mr. Gross continues to be disabled from any and all occupations based on physical and cognitive disabilities." A.R. 80.

Upon receipt of the appeal, several peer physician reviews were performed. Three different cardiologists, Dr. Feldman, Dr. Pearl, and Dr. Eaton, arrived at the same conclusion: Gross is

not totally disabled and can perform work associated with lifting no more than twenty pounds.[3]  A.R. 353, 356, 360-61, 368.

Dr. Elana Mendelssohn, Psy. D., a clinical and neuropsychologist, opined on Gross' mental condition.  A.R. 369-71.  After interviewing Gross and reviewing his record, she disagreed with Dr. Cayman's conclusion that Gross was totally disabled due to his low mental ability.  She confirmed findings that Gross' overall intellect falls within mild retardation range and that it is a life-time condition.  She pointed out, however, that Gross lives independently, cares for himself, shops, drives, cooks, and previously was able successfully to hold several jobs including the job with FedEx.  Dr. Mendelssohn concluded that since there is no indication that Gross' mental abilities diminished recently, he still was able to perform some work and therefore was not totally disabled.  A.R. 371.

The Committee members who considered Gross' appeal were four managers of FedEx who were themselves eligible to participate in compensation plans that were based, in part, on the financial performance of their employer.  Churchill Decl., Ex. A at 4; Ex. B at 4-5 [Doc. No. 25].  It was the Committee's procedure to discuss the individual appeal, Churchill Decl., Ex. C at 30, 43-

---

[3] Two of the three peer physicians, Dr. Feldman and Dr. Pearl, concluded that Gross can perform work without restrictions, including his previous job.  A.R. 353, 356, 360-61. Dr. Eaton expressed no opinion on Gross' ability to engage in any employment associated with lifting more then twenty pounds.  A.R. 368.

6

44, and the Committee members were charged with having read all documents.  Churchill Decl., Ex. D at 25.

On February 28, 2007, Gross' appeal was considered by the Committee and denied upon a vote by secret ballot.  A.R. 1; Churchill Decl., Ex. C at 39.  On April 4, 2007, the Committee issued a final decision denying Gross' appeal.  A.R. 2-7.  It was drafted by a person not present at the meeting.  Churchill Decl., Ex. C at 15-26.

**III. RULINGS OF LAW**

    **A.   Arbitrary and Capricious Review**

A district court generally reviews an ERISA plan administrator's benefits determinations de novo.  Allen v. Adage, Inc., 967 F.2d 695, 697-98 (1st Cir. 1992).  If, however, by its terms, the ERISA plan grants the plan administrator discretionary authority in the determination of eligibility for benefits, the administrator's decision must be upheld unless it is "arbitrary, capricious, or an abuse of discretion."  Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181, 183 (1st Cir. 1998) (internal citations omitted).  A decision to deny benefits to a beneficiary will be upheld if the administrator's decision "[was] reasoned and supported by substantial evidence."  Gannon v. Metro. Life Ins. Co., 360 F.3d 211, 213 (1st Cir. 2004); see Boardman v. Prudential Ins. Co. of Am., 337 F.3d 9, 15 (1st Cir. 2003).

The LTD Plan grants the Committee discretion to determine eligibility for benefits and to construe the terms of the Plan.

A.R. 555-56.  Therefore, this Court must review the Committee's decision using the arbitrary and capricious standard.

### B. Conflict of Interest

In applying the arbitrary and capricious standard, however, the existence of a conflict of interest on the part of the administrator is a factor which must be considered.  <u>Firestone Tire & Rubber Co.</u> v. <u>Bruch</u>, 489 U.S. 101, 115 (1989).  In this Circuit, if a court concludes that there is an improper motivation amounting to a conflict of interest, the court "may cede a diminished degree of deference - or no deference at all - to the administrator's determinations."  <u>Leahy</u> v. <u>Raytheon Co.</u>, 315 F.3d 11, 16 (1st Cir. 2002).  The burden is on the claimant to demonstrate a conflict of interest.  <u>Pari-Fasano</u> v. <u>ITT Hartford Life & Accident Ins. Co.</u>, 230 F.3d 415, 418 (1st Cir. 2000).

Gross argues that members of the Committee operated under a conflict of interest because, as managers of FedEx, the Committee members were eligible for a compensation plan that was linked in part to the financial performance of FedEx, and FedEx in turn sponsored the Plan.  Pl.'s Mem. at 10-12.  FedEx, however, does not pay for disability benefits out of its general assets.  A.R. 581.  All payments are made from the Trust Fund.  <u>Id.</u>  FedEx makes annual irrevocable payments to the Trust in amounts that are actuarially determined to be sufficient to fund on a level basis the benefits provided thereunder.  A.R. 582.  This means

that payments made by FedEx depend on the number of insureds under the Plan and how risky they are, but not on the amount of actual benefits paid out of the Trust Fund.  Thus, there is no conflict of interest.

In his attempt to establish conflict of interest, Gross makes other observations, namely that the Committee voted on his case by secret ballot and that the decision was drafted by someone who was not present at the meeting.  Pl.'s Mem. at 12. It is, however, not forbidden to vote by secret ballot and it is irrelevant who drafted the decision so long as it was adopted by the Committee.  Moreover, contrary to Gross' argument, FedEx provided evidence that there were always discussions of the appeals and records kept of the meetings, and that members were charged to read all documents.  Churchill Decl., Ex. C, Bryant Dep. 30, 43-44; Ex. D, Turner Dep. 23.  Therefore, Gross fails to establish a conflict of interest in this case.

**C.   The Decision of the Committee**

In its decision, the Committee stated that it reviewed all the evidence submitted.  A.R. 3.  Based on the reports of Gross' cardiologist as well as three different peer physicians, the Committee concluded that Gross physical condition allows him to work with a permanent restriction of lifting no more than twenty pounds.  A.R. 3-5.  Based on the report of Dr. Mendelssohn, the Committee concluded that Gross' is not precluded by his mental condition from performing some work.  A.R. 5-6.  The Committee concluded that "there were insufficient objective findings to

9

preclude Mr. Gross from engaging in any compensable employment for 25 hours per week for which he is reasonably qualified (or could reasonably become qualified) on the basis of his ability, education, training or experience."  A.R. 6.

Gross does not dispute the two separate conclusions made by the Committee about his physical and mental conditions.  Gross argues instead that while theoretically he is able to perform some light work requiring low intellectual skill, there are simply no actual jobs matching this description, and therefore, the combination of his mental and physical conditions makes him totally disabled.  Gross claims that the decision of the Committee was arbitrary and capricious because it failed to address the combination of his mental and physical impairments and ignored affirmative evidence about the nonexistence of any employment Gross can perform without referring to any evidence to the contrary.

The dispute originates from different readings of the definition of total disability under the Plan.  The Plan defines total disability as "the complete inability of a Covered Employee, because of a medically-determinable physical impairment . . . to engage in any compensable employment for twenty-five hours per week for which he is reasonably qualified (or could reasonably become qualified) on the basis of his ability, education, training or experience."  A.R. 555-56.  Gross claims that the Committee should have evaluated his "physical impairment" in light of his "ability, education, training or

10

experience," and consider whether there existed some "compensable employment" he could perform based on this combination. FedEx argues that determination of total disability depends solely on the medically proven physical impairment and therefore the Committee was not obliged to consider whether any employment suitable for Gross based on his low mental ability was available or existed at all.

When a question about the interpretation of the language of the plan arises, a court must follow the reasonable interpretation of the plan trustee. Jestings v. New England Tel. & Telegraph Co., 757 F.2d 8, 9 (1st Cir. 1985). To support its reading, FedEx cites Jestings where a court upheld an interpretation of the similarly-worded disability plan as not requiring "employability assessment." Def.'s Mem. in Supp. Mot for Sum. J., at 8 [Doc. No. 21]; see Jestings, 757 F.2d at 9-11 (teaching that under that plan it was enough that claimant was able to perform some job even if such job was not 'available' for him). In Jestings, the First Circuit noted that language of the plan was similar to that of the Social Security program, which also does not require an employability assessment. Id. at 10; see Lopez v. Secretary of Health, Education and Welfare, 512 F.2d 1155, 1157 (1st Cir. 1975) (stating in the context of Social Security Disability benefits that "[i]t is not necessary that [the Secretary] demonstrate that a particular claimant would actually be hired, or even that there is a realistic chance of his being so. It is sufficient that he show that there are

11

specific jobs in the national economy which a claimant is capable of performing.")

The Court agrees with FedEx's position that it is reasonable to interpret the language of the LTD Plan as not requiring an employability assessment. This means that the Committee was not required to demonstrate that some employment was actually **available** for Gross. See Jestings, 757 F.2d at 9; see also Lopez, 512 F.2d at 1157. The Court disagrees, however, that FedEx can go further and interpret the definition as not requiring an evaluation as to whether any jobs **existed**, which Gross was capable of performing based on his ability, education, training or experience. Such an interpretation entirely ignores half of the definition of "totally disabled," namely "an inability of a Covered Employee . . . to engage in any compensable employment for twenty-five hours per week for which he is reasonably qualified (or could reasonably become qualified) on the basis of his ability, education, training or experience." A.R. 555-56. This interpretation is not supported by case law and is unreasonable. See Jestings, 757 F.2d at 11 (noting that it was undisputed that jobs Jestings was able to perform existed).

Therefore, the Committee had to analyze whether there existed compensable employment that Gross was capable of performing, taking into account his physical impairment and low mental ability. It is true that the Committee was not obliged to name any types of positions because the burden was on Gross to

show by substantial objective findings that he is not able to engage in any employment.  Once Gross came forward with evidence supporting his position, however, the Committee could not just disregard it.

In support of his contention that there existed no jobs whatsoever that he could perform, Gross submitted the following evidence to the Committee: printouts from the O*Net database showing that there are no jobs in which Gross can engage based on his cognitive skills; a vocational expert's report concluding that Gross is more likely than not disabled from all occupations; and a determination by the Social Security Administration under a similarly worded disability plan that he is totally disabled and eligible for Social Security benefits.  The Committee never explained why this evidence ought be disregarded nor did it come up with evidence to the contrary.  Concerning the O*Net database, the Committee stated that "the Plan does not base its eligibility for benefits on whether there are or are not occupations within Mr. Gross' job zone as determined by the U.S. Department of Labor's O*Net database."  A.R. 4.  The Committee mentioned the existence of the vocational report but stopped there.  <u>Id.</u> Concerning the disability determination of the Social Security Administration, the Committee noted that "the criteria utilized by the Social Security Administration for the determination of Social Security disability awards is different from the definition for Total Disability set forth in the Plan."  A.R. 6.  It never explained, however, in what way the similar language of

13

the two plans are actually different, given that the Social Security Administration's definition of disability does not require an employability assessment.

Finally, the Committee never expressly reached the conclusion that despite the evidence to the contrary proffered by Gross, there are jobs Gross can actually perform based on the combination of his physical and mental impairments.  This conclusion, even if implicit, is supported neither by reasoning nor by evidence.  At the oral hearing, FedEx's counsel stated that it is just common sense that jobs for people like Gross exist.  This may well be, but the Committee never so stated in its decision and gave no examples of such jobs, which would be natural were it just a matter of a plain common sense.

The Committee was operating under the incorrect understanding that the determination of disability under the Plan does not depend on the existence of a job that Gross can perform, but only on his medical condition.  The Committee believed it was not required even to consider Gross' argument that there are no jobs matching his combined physical and mental abilities.  As the Court has explained above, however, such an interpretation, in contrast to one that simply does not require showing that the job is reasonably available, is overly limited and unreasonable.  Thus, the Committee acted unreasonably by not addressing Gross' combination of conditions argument and the evidence in support thereof.

**IV. CONCLUSION**

As a result of the foregoing analysis, the Court DENIES FedEx's motion for summary judgment [Doc. No. 19].  The case is remanded to the Committee for a proper analysis of the issue. This Court will retain jurisdiction.

**SO ORDERED.**

/s/ William G. Young
———————————————
WILLIAM G. YOUNG
DISTRICT JUDGE